UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                      Case No. 24-CR-0293(5) (PJS/DTS)

         Plaintiff,

v.                                                                          ORDER

VICTOR COLLINS a/k/a Vic,

         Defendant.

---

Garrett S. Fields and David M. Classen, UNITED STATES ATTORNEY'S
OFFICE; and Pegah Vakili, UNITED STATES DEPARTMENT OF
JUSTICE, for plaintiff.

Thomas H. Shiah, LAW OFFICES OF THOMAS H. SHIAH, LTD.; and
Steven J. Wright, LAW OFFICE OF STEVEN J. WRIGHT, LLC, for
defendant.

Defendant Victor Collins is one of 14 defendants who are charged with various

crimes arising from, or relating to, their alleged participation in a criminal racketeering

enterprise—specifically, a violent street gang known as the "Lows," which operates

primarily on the north side of Minneapolis.  ECF No. 313.  The defendants have filed

more than 60 pretrial motions.

This matter is before the Court on Collins's objection to the February 26, 2026,

Orders [ECF Nos. 630, 632] and Report and Recommendations ("R&Rs") [ECF Nos. 631,

633] of Magistrate Judge David T. Schultz.[1]  The Court has conducted a de novo review.

*See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  Based on that review, the Court

overrules Collins's objection, affirms both Orders, and adopts both R&Rs.

## I.  ORDER 1

Order 1 is careful and thorough, and the Court agrees with Judge Schultz's

analysis.  Only one matter regarding Order 1 merits comment.  In that order, Judge

Schultz denied Collins's motion for severance.[2]  Collins argues that his trial should be

severed because it "will likely involve violent acts up to and including murder" in

which he did not directly participate.  Obj. at 5.  Alternatively, Collins argues that he

should be able to re-litigate the issue when his trial group is finalized because Judge

Schultz remarked that it was not "even clear at this time which defendants will be tried

---

[1]For ease of reference, the Court refers to the identical Order and R&R docketed at ECF Nos. 630 and 631 as "Order 1" and the identical Order and R&R docketed at ECF Nos. 632 and 633 as "Order 2."

[2]Collins notes the absence of clear authority as to whether a motion to sever is dispositive—and thus subject to de novo review under Fed. R. Crim. P. 59(b)(3)—or nondispositive—and thus reviewed only for clear error under Rule 59(a).  *See* Objection, ECF No. 656, at 4–5.  The distinction does not matter here; the result would be the same under either standard.  *See, e.g., United States v. Nunn*, No. 22-CR-0303 (ECT/DJF), 2023 WL 4348708, at *1 n.1 (D. Minn. July 5, 2023) (reviewing de novo "to eliminate the issue"); *United States v. McConnell*, No. 13-CR-0273 (SRN/FLN), 2017 WL 111304, at *3 (D. Minn. Jan. 11, 2017) (treating severance motion as nondispositive while noting that "the Court's ruling . . . would be the same even under a de novo standard of review").

together."  Order 1 at 10.  The Court denies Collins's request to re-raise this issue and affirms Order 1.

As Judge Schultz pointed out, "there is a strong presumption against severing trials."  *United States v. Kramer*, 768 F.3d 766, 770 (8th Cir. 2014).  "As a practical matter, disparity among the defendants in extent of involvement and culpability is commonplace in conspiracy cases and does not alone show the kind of prejudice that would require a district court to sever, rather than to respond with some less drastic measure such as a curative instruction."  *United States v. Spotted Elk*, 548 F.3d 641, 658 (8th Cir. 2008); *see also United States v. White*, No. 23-CR-0043, 2024 WL 5054963, at *13 (S.D. Iowa Sept. 3, 2024) (declining to order severance despite "evidence of violent acts [the defendant] did not directly participate in" because the evidence would be admissible "to prove that the agreement or understanding involved two or more racketeering acts" (citing *United States v. Darden*, 70 F.3d 1507, 1527 (8th Cir. 1995)).

Collins identifies no specific prejudicial evidence that is likely to be admitted at his trial against a codefendant, but not against him.  Even if Collins had identified such evidence, the Court has no reason to believe that curative instructions would not protect Collins.  Indeed, recent gang RICO cases in this District have made clear that jurors in such cases are willing and able to follow such instructions.  Thus, the Court affirms Order 1 and denies Collins's request to re-raise the issue.

## II.  ORDER 2

Order 2 (like Order 1) is well done, and the Court agrees with it.  The Court will briefly address only three of Collins's arguments.

### A.  Warrantless Arrest

Collins takes issue with Judge Schultz's conclusion that law enforcement had probable cause to arrest Collins without a warrant.  Collins first argues that Judge Schultz failed to acknowledge Officer Smedsrud's testimony that Smedsrud (1) did not initially have probable cause to arrest Collins; and (2) could not be sure Collins was the person identified by the informant.  Obj. at 6.  The Court agrees with Judge Schultz and the cases cited in Order 2 that Officer Smedsrud did not need to have probable cause—or, really, anything but curiosity—to *approach* Collins.  Order 2 at 7–9.  A police officer, like any other citizen, has every right to approach and speak to another citizen who is standing in a public place.  Thus, the cited testimony of Officer Smedsrud is not relevant to the ultimate question of whether the fact that Collins *fled* from the officers *after* the initial approach provided probable cause to arrest him.

Collins next objects to Judge Schultz's reliance on the fact that Officer Smedsrud said "[n]o, don't" as Collins began to run away.  *See* Obj. at 8; Order 2 at 2, 8; Gov. Ex. A-4 at 00:45–00:55.  Collins argues that the command "would not have been audible or discernible to someone who was already a good distance away."  Obj. at 8.  Collins

-4-

makes the same argument as to other orders that Officer Smedsrud's partner yelled at Collins near the end of their chase. *Id.* at 8–9. In Collins's view, if Collins did not hear the commands, he did not disobey law enforcement and was instead exercising his right to leave a consensual encounter. *Id.* at 7–9.

The relevant question, though, is not whether Collins *in fact* heard the orders, but whether a reasonable officer in the position of Officer Smedsrud or his partner could have *believed* that Collins heard the orders. "[P]robable cause is an objective standard." *D.C. v. Wesby*, 583 U.S. 48, 55 n.2 (2018). "To determine whether an officer had probable cause to arrest an individual," a court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Courts must "afford officers substantial latitude in interpreting and drawing inferences from factual circumstances." *Just v. City of St. Louis*, 7 F.4th 761, 767 (8th Cir. 2021) (cleaned up). Based on the evidence in the record, the Court concludes that a reasonable officer could have believed that Collins heard—and thus defied—the officers' orders.

Moreover, even putting aside the issue of the orders issued to Collins, Officer Smedsrud still had probable cause to arrest Collins for fleeing from a law-enforcement officer. Officer Smedsrud and his partner got out of a marked police car wearing police

-5-

uniforms and approached Collins, who matched an informant's description of a person who was selling drugs and possessing a firearm. Gov. Ex. A-4 at 00:30–00:55. As they approached Collins, the officers asked him to remove his hands from his pockets. *Id.* at 00:45–00:55. Collins immediately turned and ran. *Id.* The officers then pursued him on foot, including through oncoming traffic. *Id.* at 00:55–2:20. Based on the totality of these circumstances, the officers had probable cause to arrest Collins for the crime of fleeing law enforcement, whether or not Collins heard any of their commands. *See, e.g., United States v. Finley*, 56 F.4th 1159, 1165–66 (8th Cir. 2023); Order 2 at 8–9 (collecting cases). The warrantless arrest was therefore lawful.

### B. Backpack Search

Collins next objects to Judge Schultz's application of the Eighth Circuit's decision in *United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010), to find that the warrantless search of Collins's backpack was lawful. Obj. at 9–10. Collins argues that *Arizona v. Gant*, 556 U.S. 332, 339 (2009), controls and dictates a different result. But *Perdoma* (which was decided after *Gant*) binds this Court, and *Perdoma* clearly held that a bag within reaching distance of a suspect may be searched without a warrant, even if the suspect is "restrained and a police officer ha[s] taken control of the bag." 621 F.3d at 750. Collins's case is on all fours with *Perdoma*. Indeed, Collins relies on precisely the argument that *Perdoma* rejected. *See* Obj. at 9 ("Mr. Collins was handcuffed and fully

under control by the officers, making it impossible that he could reach the backpack."). The Court agrees with Judge Schultz that, under *Perdoma*, the backpack search was lawful.

### C. *Independent-Source Doctrine*

Lastly, the Court addresses Collins's objection to Order 2's application of the independent-source doctrine.[3]  Judge Schultz found that Officer Smedsrud would have applied for a second search warrant for drug-related evidence even if he had never seen the tainted evidence that was outside the scope of the first search warrant. *See United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008).  Collins contends that Judge Schultz himself acknowledged that "simply nothing in the record" can support such a holding. *Id.* at 11–12.  That is just not true.  It is beyond dispute that Officer Smedsrud approached Collins because he matched the description of someone who, according to a confidential informant, was *selling drugs*. *Id.*  It is also beyond dispute that police found *drugs* both on Collins and along the route he had taken in fleeing.  And the application for the first search warrant included extensive details about *drugs*.  Gov't Ex. A-1.  It is a near certainty that, once Officer Smedsrud realized that the first search warrant was limited to firearms evidence, he would have sought a second warrant to search for drug evidence.

---

[3]Because the Court agrees with Judge Schultz that the independent-source doctrine applies, the Court does not need to reach the question of whether the plain-view doctrine would also apply to the drug-related images obtained via the iPhone search. *See* Order 2 at 16–19; Obj. at 11; Resp. at 25–28.

*See* Order 2 at 20–21 & n.6.  For these reasons, the Court fully agrees with Judge Schultz, and the motion to suppress is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      Defendant Victor Collins's objection [ECF No. 656] is OVERRULED.

2.      The February 26, 2026, Report and Recommendations [ECF Nos. 631, 633] are ADOPTED:

  a.      Collins's motion to dismiss the superseding indictment [ECF No. 373] is DENIED.

  b.      Collins's motion to suppress evidence [ECF No. 376] is DENIED.

3.      The February 26, 2026, Orders [ECF Nos. 630, 632] are AFFIRMED:

  a.      Collins's motion for disclosure of Brady materials [ECF No. 374] is DENIED.

  b.      Collins's motion to sever [ECF No. 375] is DENIED.  And

  c.      Collins's motion to disclose and make informant available for interview [ECF No. 377] is DENIED.

Dated: June 1, 2026                          /s/ Patrick J. Schiltz
                                             Patrick J. Schiltz, Chief Judge
                                             United States District Court